# DECISIONS

## OF THE

# Court of Appeals of Kentucky

## JANUARY TERM, 1913

### Garrett v. State Tobacco Warehouse Company, et al.

(Decided March 18, 1913.)

#### Appeal from Shelby Circuit Court.

1. Principal and Agent—Relation—Evidence—Declaration and Acts of Agent.—Agency cannot be established by the mere declaration of one claiming, or alleged to be an agent.

2. Partnership—Relation—As To Third Persons—Estoppel.—The declaration and acts of one claiming to be an agent, not made in the presence of, or acquiesced in, by his alleged partners, do not estop them from denying the existence of such partnership.

3. Partnership—Relation—Evidence—Weight and Sufficiency as to Third Persons.—Evidence held to be insufficient to show a partnership between a tobacco buyer and tobacco merchants and brokers, who handled the tobacco so purchased.

RALPH GILBERT, GEORGE L. PICKETT for appellant.

WILLIS, TODD & BOND for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

In April, 1911, J. W. Garrett filed suit against the State Tobacco Warehouse Company, in which he alleged that he had, on the 9th day of the previous October, sold to it a certain crop of tobacco; that it refused to receive the tobacco; that he was compelled to and did sell it to other parties at a loss of $749.57; and sought to recover judgment for this amount. In September following, in an amended petition, he alleged that J. S. Turner and H. E. Riggs were silent partners in said purchase, and jointly interested with the warehouse company in it. They

were made parties defendant. The warehouse company filed its answer, traversing the allegations of the petition as amended. Turner also joined issue on the facts alleged in the petition. Riggs admitted having entered into a contract with plaintiff for the purchase of the tobacco, but alleged that it was to be delivered at a given time and plaintiff failed and refused to comply with his contract until after the tobacco market had broken, and he then refused to accept the tobacco. In a reply, plaintiff pleaded that defendants had held themselves out to the public as being jointly interested in the purchase of leaf tobacco in Henry County in the vicinity where plaintiff lived, and that the warehouse company knowingly suffered and permitted Riggs to hold himself out to the public as connected with them in the purchase of leaf tobacco. The affirmative matter in the reply was traversed, thus completing the issue. The case was submitted to a jury, and at the close of the evidence, the court peremptorily instructed the jury to find for the warehouse company and Turner. A verdict was entered for the plaintiff against the defendant, Riggs. Plaintiff appeals and seeks a reversal, because of the ruling of the trial court in directing a peremptory as to the warehouse company and Turner.

The evidence shows that when Riggs bought this tobacco he made statements which were calculated to, and no doubt did, lead appellant to believe that the warehouse company would pay for it. No one representing the warehouse company or Turner was present when the tobacco was bought. Neither it nor Turner, so far as the evidence shows, knew anything of the purchase of this tobacco. There is no evidence that there had ever existed between Riggs and either the warehouse Company or Turner any partnership arrangement for the purchase of tobacco; but, on the contrary, the evidence shows that the warehouse company was a creditor of Riggs; it loaned him money to buy tobacco under an agreement, by which he shipped the tobacco so bought by him to its warehouse and paid it eight per cent on the money so loaned him for the time he used it. Their dealings were conducted in this way: Riggs would notify the warehouse company that he had opportunity to buy certain crops of tobacco at stated prices, and when the management of the company regarded the prices as safe, they would advance Riggs the money with which to pay for it. This

was done by draft drawn on the warehouse company by Riggs. The amount of money so paid on his drafts would be charged to his account, and when the tobacco had been handled by Riggs, it was shipped to the warehouse and sold by it, and the net proceeds of the sale credited to his account. The inducement for the warehouse company to enter into this arrangement was two-fold. First, it received a good rate of interest on the money loaned; and, second, it got the fees for selling the tobacco. Further than this, the evidence fails to show that the warehouse company had any interest whatever in any tobacco purchased by Riggs.

The evidence conclusively shows that appellee, Turner, was at no time in 1910 or 1911 interested with Riggs in the purchase of tobacco, and had no connection with him. Thus, the evidence wholly fails to show that the company and Riggs were partners, or jointly interested in the purchase of tobacco, or that Turner had any connection with him in the transaction complained of. Appellant had no conversation or communication with the warehouse company, or any one connected therewith, untill long after the tobacco had been bought and Riggs had refused to receive any pay for it. In the spring of 1911, Turner was asked about it by appellant. He was told that he, Turner, was not buying tobacco, but engaged in selling it. This was the extent of their communication upon the subject, so far as appellant was able to show. There is no evidence showing either directly or inferentially that either the warehouse company or Turner knew that Riggs had been representing himself to be the agent of either, or in any wise connected with him, in the purchase of the tobacco.

On this showing the ruling of the trial court was justified and finds abundant support in the decisions of this court, where similar rulings have been passed upon, among which may be cited Fox v. Commercial Press Co., 28 Rep., 44, where, in upholding the ruling of the trial court in sustaining a demurrer to the petition, this court said:

"It will be observed that it is simply charged in the petition that Herrman represented to the plaintiff that he (Herrman) had a certain contract with the Louisville Press Co. It is nowhere averred that Herrman in fact had the contract with that company which is set up in the petition. All that is stated in the petition may be

true, and Herrman may have had no contract at all with the Louisville Press Co. It is not averred that the plaintiff paid Herrman $300 upon the faith of any representations made to him by the Louisville Press Co., or that plaintiff was in any manner induced by the Louisville Press Co. to make the contract with Herrman and pay him $300. It is simply averred that the plaintiff relied upon the representations made by Herrman and paid Herrman $300 for his rights and thereupon the Louisville Press Co. accepted plaintiff in place of Herrman and recognized and admitted the ownership of plaintiff of such rights as represented by Herrman, and but for this he would have demanded and recovered from Herrman his $300. * * * No principle of agency, therefore, applies, and the estoppel fails because it is not shown that the press company knew what was the contract between plaintiff and Herrman, or that it should have known that its conduct was misleading the plaintiff in any way. An agent's authority cannot be shown by his own representations."

The only difference between that case and the case at bar is that in that case there was a failure to state facts which would support a cause of action, whereas, in this case, the facts proven do not support the cause of action stated.

Again, in Payton v. The Woolen Mills Co., 28 Rep., 1303, creditors of the firm of Payton, Webb & Co. sought to hold Mrs. Frances L. Payton liable for certain firm debts, because of representations made by her husband in the conduct of the firm's business. She denied liability. The court found that her husband, Frank Payton, had practiced a fraud upon the creditors and, after reciting the various acts constituting the fraud, said:

"But if this fact were even clearer than it is, it would afford no ground for charging the fault of it to his wife, unless she, too, participated in it, by purposely suffering it, or authorizing it, to aid in the deceit. We may say, in passing, that there was considerable evidence that appellant was in fact the F. L. Payton who was a member of the firm, and that she herself so recognized and treated the matter. It is not our purpose to discuss this phase of the case, though, further than may be necessary in the treatment of the legal questions which we will dispose of, as we conceive the decision of the facts to be a matter for

the jury under the guidance of proper instructions and competent and relevant evidence.    *    *    *

"It is undeniably true that where one acts in a matter by an agent, the latter's action in the matter, if within the real or apparent scope of his agency, is as binding on the principal as if done by the principal himself. But it is always necessary to first establish the fact of the agency, and to show the actual or apparent scope of the agent's authority. This cannot be done by proving what the agent said or represented as to the extent of his authority."

Numerous authorities are cited in said opinion in support of this principle. The difficulty with appellant's position in this case is, that there was no evidence establishing Riggs' agency for either Turner or the warehouse company, and, until his agency is established, as stated, he was powerless to bind neither by any representations that he made. There being no evidence in any wise tending to establish an agency on the part of Riggs for either Turner or the warehouse company, except statements alleged to have been made by Riggs, when neither of his alleged principals was present or knew that such statements were being made, the court properly held that appellant had failed to make out his case as to the warehouse company and Turner.

Judgment affirmed.